## Chicago City Ry. Co. v. General Electric Co.

1. INJUNCTIONS — *To Restrain a Conspiracy.*—If acts which are relied upon as constituting or evidencing a conspiracy to injure a complainant constitute a sufficient basis for chancery jurisdiction, then a court of chancery may interpose and grant relief; but there can be no equitable jurisdiction to enjoin a conspiracy, unless the acts which go to make up that conspiracy are also a subject of equitable cognizance.

2. SAME—*On Account of Irreparable Injury—Facts Showing Injury Must be Pleaded.*—It is not sufficient to allege in a bill for injunction that irreparable injury or damage will result to the complainant by the acts or threats of the defendant, but such facts must be set forth as will enable the court to determine for itself from the facts, whether that result will follow or is likely to follow.

3. SAME—*To Prevent Maintenance.*—Chancery has no jurisdiction to enjoin maintenance where the remedy at law appears to be plain and adequate, it being alleged in the bill that the defendant has vast wealth.

4. SAME—*To Prevent a Multiplicity of Suits.*—That there are a number of suits already pending, and that others are threatened, is not of itself a cause for the interference of equity by injunction.

5. SAME—*To Prevent a Multiplicity of Suits—No Interference Where Remedy is Adequate Without an Injunction.*—A court of chancery will not interfere by injunction to prevent the prosecution of a number of suits where it appears that some of them are suits in chancery as to which the complainant can make defense, and thus attain his full rights, and where there is no showing that the complainant can not make a complete defense without resort to chancery to such of the suits as are at law.

6. MAINTENANCE—*Absence of Legal or Equitable Interest Essential.* —The offense of maintenance can not exist in this State when the person charged therewith has a legal or equitable interest in the subject-matter of the suit or litigation which he promotes, distinct from that which he may acquire by agreement with the suitor, and where maintenance is charged the absence of such interest should be shown.

7. LIBELS—*Injunctions to Prevent.*—The court holds the alleged libelous and derogatory statements claimed to have been circulated by appellant and those threatened can not be restrained by injunction, because, if libelous, appellee has its remedy at law.

**Bill,** for an injunction and general relief. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1897. Reversed and remanded. Opinion filed March 3, 1898.

JOHN P. WILSON and S. S. GREGORY, attorneys for appellant.

FRANCIS A. RIDDLE, attorney for appellee.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Appellee filed its bill for an injunction and general relief against appellant George H. Wheeler and others, to which demurrers were interposed by the several defendants. Later it filed an amended bill making additional defendants, to which a demurrer as to part and a plea to the remainder were filed. This amended bill was further amended and afterward dismissed as to all the defendants except appellant, and to the bill thus amended the chancellor overruled appellant's general demurrer and entered a decree, appellant abiding by its demurrer, enjoining and restraining its officers, agents, employes and attorneys, from prosecuting or maintaining any action or suit specifically mentioned in the bill, and to which appellant is not a party; also from employing or paying, either directly or indirectly, from its treasury or otherwise, any fee or fees, and from giving any gratuity, in the shape of money or otherwise, to any attorney or solicitor, or to any agent or employe of appellant, for services in any of the certain suits, legal proceedings or causes of action specifically mentioned and set forth in the bill, and to which appellant is not a party; also from instigating, and from procuring others, either individuals or corporations, to begin, instigate, maintain or prosecute any action, whether it be suit at law or in equity, in any court whatsoever, against the said complainant for the purpose of hindering,

interfering with, obstructing or delaying the said complainant from constructing, maintaining, equipping and operating a line of street railway within the South Division of the city of Chicago under and by virtue of the ordinances heretofore granted by the said city of Chicago to said complainant for that purpose; and also from doing or causing to be done any act or thing, either directly or indirectly, for the purpose of hindering, delaying or interfering with, by any means whatsoever, the right and privilege of said complainant to carry on and complete any financial transactions which the said complainant may deem necessary for the purpose of enabling the said complainant to properly construct, equip, maintain and operate a line of street railway within the South Division of the city of Chicago, under and by virtue of the said ordinances so granted by the said city of Chicago for that purpose.

The allegations of the bill as finally amended, so far as pertinent to the relief granted, are, in substance, viz.:

Appellee is a corporation organized under the laws of Illinois to carry on a street railroad business, and as such has certain rights, privileges and advantages granted to it by the city council of Chicago under two certain ordinances, copies of which are attached to the bill and made a part thereof; that it had accepted the ordinances and agreed to be bound thereby in the construction, maintenance and operation of the street railroads therein mentioned, along and over the streets, alleys and highways of the city, and in all respects to comply with said ordinances which granted it a license and permission to construct, maintain and operate street railroads on upwards of twenty miles of streets in length in the South Division of Chicago; that it is appellee's intention immediately and without delay to construct and fully equip the complete lines of street railway, licenses to construct which are granted to it by said ordinances, and if granted the relief asked by the bill it will greatly aid appellee in hastening such building and construction of said street railway; that appellant is also a corporation organized under the laws of Illinois for the purpose of carrying

on a like street railway business, and is now the owner and operator of nearly all of the lines of street railway in said South Division of the city, has vast wealth, and has a practical and exclusive monopoly of all the street railway traffic in said South Division, which is an exceedingly valuable and increasingly profitable business, and that appellant now seeks unlawfully to exclude competition in the street railroad business within said South Division of the city; that said ordinances require appellee to pay an ample compensation to the city for the use of its streets for street railway purposes, which will relieve the tax payers of some of the burden of oppressive and onerous taxation; that appellant is vitally interested in the perpetuation of its monopoly in the street railroad traffic which it enjoys in the South Division of the city, and in preventing appellee from competing in any way with appellant in the street railway business, and in defeating the operation and construction of appellee's system of street railways; that appellant and its officers fear that the city council will insist and demand the payment by appellant of just and due compensation for the use of streets and highways in the city, as a condition of granting to appellant any extension of its present license in that behalf; the appellant, moved by its said interests, has, from the date of appellee's first ordinance, opposed and harassed appellee in every step taken tending to the construction of its line of street railway, and by every fraudulent and dishonest means has sought to defeat the force and effect of appellee's ordinances, and to prevent it from negotiating any financial arrangement with reference to the construction and operation of appellee's street railways, and now proposes in future to harass and annoy appellee and to prevent the construction and maintenance by appellee of its lines of street railway under said ordinances; that appellant, through its officers, attorneys, agents and employes, has organized and now maintains and directs an unlawful combination or conspiracy, by which it has attempted and now is attempting to exclude all corporations, especially appellee, from the right of carrying on the street railway business in the territory now occupied by appellant,

and from constructing and operating appellee's said lines of street railway; that in order to carry out said conspiracy, appellant has caused to be instituted and prosecuted in the different courts of Cook county divers suits and legal proceedings at law and in equity by divers persons against appellee, which suits, with the parties thereto and the attorneys, are specifically described and set out in the bill, but not the questions or issues involved in the several suits; that all said suits and legal proceedings were not brought in good faith by any of the plaintiffs or complainants therein, but were in fact brought at the request, by the procurement and at the expense and under the direction of appellant, through its officers, agents, attorneys and employes, for the purpose of aiding and abetting said conspiracy; that none of said suits were for the purpose of securing to the plaintiffs or complainants therein any just and lawful right of any of said plaintiffs or complainants against appellee; that said suits are now maintained merely for the purpose of annoying, embarrassing and preventing appellee from constructing and operating its said lines of street railway, and because the operation of appellee's lines of street railway would tend to break, impair and destroy appellant's said monopoly of the street railway business; that one Brandenberg and one Bates, in whose names certain of said suits (describing them) were prosecuted, had no interest of any kind or nature whatsoever in said suits, but they begun and prosecuted said suits at the instigation and by the procurement of appellant, without any just or lawful right or claim on their part, and solely as a part of said conspiracy; that one McConnell, an attorney, and other attorneys and solicitors associated with him in said suits, have been hired and paid by appellant for their services therein; that in furtherance of said conspiracy said McConnell, instigated by appellant or some of its officers, agents or employes, made, published and sent abroad a letter to one Dodge (which is set out in the bill); that said letter was designed by appellant to injure appellee and to embarrass, hinder and delay it in the construction of its line of street railway, and was sent for the express purpose,

among others, of preventing the Love Electric Traction Co., of which Dodge is president, from making or carrying out a contract with appellee, or with any of appellee's lessees or assignees, respecting the construction and equipment of appellee's line of railway; that said letter contains many false and deceptive statements, injurious to appellee, but that in answer thereto said Dodge referred said McConnell to the officers of appellee; that said McConnell, also acting at the instance, request and expense of appellant, wrote and sent by mail similar statements to other persons (naming them) for the purpose of prejudicing the standing of appellee in the consideration and esteem of said persons, and to prevent the construction of appellee's line of railway; that said unlawful conspiracy, combination and confederacy maintained by appellant, its officers, attorneys and others, have greatly injured, embarrassed and delayed appellee in the construction of its said line of street railroad; has greatly tended to depreciate the value of the rights, privileges and advantages secured to appellee by said ordinances; and that certain persons (naming them), employed and paid by appellant for that purpose, have threatened and now threaten to continue to harass, hinder, embarrass, delay, and, if possible, prevent appellee from constructing and operating its said line of street railway, and to bring other suits against appellee for that purpose, and have threatened and now threaten to publish other statements derogatory to appellee among bankers in New York and elsewhere, for the purpose of injuring appellee's credit and of preventing appellee from making favorable negotiations for any capital which may be necessary to appellee in the construction and operation of its railroad; that unless an injunction is granted appellee will suffer great and irreparable injury and damage, and that such injury and damage can only be prevented by an injunction.

The injunction granted by the chancellor was in conformity to the prayer of the bill, but not to the full extent prayed. From the decree of injunction, which has been stated, this appeal is prosecuted.

As we construe the bill, it seeks to enjoin the mainte-
nance of the suits of third persons, specifically mentioned,
and others threatened, and similar suits, and from circu-
lating libelous or derogatory statements concerning appel-
lee. Appellant's counsel contend, first, that the bill fails to
allege facts showing that it is guilty of unlawfully main-
taining or threatening to maintain suits against appellee;
second, that chancery has no jurisdiction to enjoin the
offense of maintenance, the remedy at law being plain and
adequate; and third, that equity will not enjoin libels upon
the trade or business of appellee, but will leave it to resort
to its legal remedy.

Counsel for appellee, however, disclaims that it is sought
to enjoin the offense of maintenance or the circulation
of derogatory or libelous statements about appellee, but to
enjoin an unlawful confederacy and conspiracy in which,
it is claimed, appellant is engaged, with others, to destroy
appellee's property rights, and, if we fully comprehend his
position, that the acts constituting the present and threat-
ened maintenance, as well as the past and threatened libelous
and derogatory matters, are merely evidence of the unlaw-
ful confederacy and conspiracy.

If the several acts which are set out as constituting or
evidencing the confederation and conspiracy constitute a
sufficient basis for chancery jurisdiction, then a court of
chancery may interpose and grant relief; but we can not see
on what principle of reasoning or law there may be equi-
table jurisdiction to enjoin the conspiracy, unless the acts
which go to make up that conspiracy are also a subject of
equitable cognizance. We therefore think that it is neces-
sary to determine whether the specific acts and things
alleged to have been done by appellant, and which it is
alleged appellant has threatened to do, are proper subjects
of chancery jurisdiction. First, however, it should be
determined whether the allegations of the bill are sufficient
to show that appellant has been guilty of the offense of
maintenance. If chancery will not enjoin maintenance, cer-
tainly a course of conduct similar to, and having all the ele-

ments of, the offense of maintenance, so far as it goes, but not sufficient to constitute that offense, would not be enjoined.

Conceding that the allegations of the bill sufficiently show that the several suits specifically mentioned, and also those threatened, are without any valid basis and without any lawful right or claim on the part of the several plaintiffs and complainants (of which we have serious doubt), still it is not alleged that appellant has no legal or equitable right nor interest in such suits, and for aught that appears from the bill, except, perhaps, as it may be inferred, appellant has an interest in said suits and a perfect right legally and equitably to maintain all or any of them, or to cause others to be commenced against appellee. It is elementary that every pleading is to be taken most strongly against the pleader. It is not maintenance to assist in a public prosecution. Masters v. Miller, 4 Term Rep. (Durnf. & East) 320; Commonwealth v. Dupuy, Brightly's Rep. (Penn.) 44.

Nor is it maintenance when the person promoting the suit of another has a legal or equitable interest in the thing demanded distinct from that which he may acquire by agreement with the suitor. 3 Am. & Eng. Ency. of Law, 76; Thallhimer v. Brinckerhoff, 3 Cow. 623; Findon v. Parker, 11 Mee. & Wel. 675; McCall v. Capehart, 20 Ala. 521; Gilman, Son & Co. v. Jones, 87 Ala. 691, and cases cited; Call v. Calef, 13 Met. 362.

On the subject of maintenance, the statute of this State, Hurd's Rev. Stat., Ch. 38, Secs. 26 and 27, is, viz.:

" Section 26. If any person shall wickedly and willfully excite and stir up any suits or quarrels between the people of this State, either at law or otherwise, with a view to promote strife and contention, he shall be deemed guilty of common barratry and shall be fined not exceeding $100, and if he be an attorney or counselor at law, he shall be suspended from the practice of his profession, for any time not exceeding six months.

" Section 27. If any person shall officiously intermeddle in any suit at common law or in chancery, that in no wise

belongs to or concerns such person, by maintaining or assisting either party, with money or otherwise, or prosecute or defend such suit with a view to promote litigation, he shall be deemed guilty of maintenance, and upon conviction thereof shall be fined and punished as in cases of common barratry; *Provided*, that it shall not be considered maintenance for a man to maintain the suit of his kinsman or servant, or any poor person, out of charity."

It seems quite clear from the statute, that the charges made against appellant as to the maintenance of suits, if they are sufficient to constitute a statutory maintenance, come within section 27, and that from the words in that section, " that in no wise belongs to or concerns such person," the offense of maintenance can not exist in this State when the person charged therewith has a legal or equitable interest in the subject-matter of the suit or litigation which he promotes, distinct from that which he may acquire by agreement with the suitor.

We therefore think that under the allegations of the bill it can not be said that appellant is guilty of the offense of maintenance as at common law nor under the statute.  But even if the acts charged constitute maintenance to the damage of appellee, for which an action would lie, it is held that chancery has no jurisdiction to enjoin, because appellee has its remedy at law, which appears to be plain and adequate, as it is alleged that appellant has vast wealth.  1 Hawkins' Pleas of the Crown, 462; Commissioners v. Green, 156 Ill. 504; Burton v. Perry, 146 Ill. 71; Jones v. Chester Oil Co., 17 Ill. App. 111; Mexican Asphalt Co. v. Mexican Asphalt Paving Co., 61 Ill. App. 356; Carney v. Hadley, 14 Southern Rep. 4; Harms v. Jacobs, 158 Ill. 505, and cases cited.

Besides, several of the suits are shown to be suits in chancery, as to which appellee can make its defense and thus attain its full rights.   The other suits are at law, as to which there is no showing that appellee can not make complete defense without resort to chancery.   Redd v. Blandford, 54 Ga. 123; Dayton v. Relf, 34 Wis. 86; Newman v. Commercial Nat'l Bank, 156 Ill. 530; Cook County v. City of Chicago, 158 Ill. 524.

That there are a number of suits already pending, and that others are threatened, is not of itself a cause for equitable cognizance. 1 High on Injunctions; 64 and 65; Chicago Pub. Stock Ex. v. McClaughry, 148 Ill. 372; Poyer v. Village of Des Plaines, 123 Ill. 114.

As to the alleged libelous and derogatory statements claimed to have been circulated by appellant, and those threatened, an injunction will not lie because, if libelous, appellee has its remedy in a court of law. Francis v. Flinn, 118 U. S. 385; Everett Piano Co. v. Bent, 60 Ill. App. 372, and cases cited; Covell v. Chadwick, 153 Mass. 263; International, etc., Co. v. Carmichael, 44 Fed. Rep. 350; Flint v. Hutchinson S. Burner Co., 110 Mo. 492-7, and cases cited.

The case of Cobb v. Illinois & St. L. R. R. & C. Co., 68 Ill. 233, cited and especially relied on by appellee as sustaining its right to an injunction, in so far as it may seem to lay down a different rule from the authorities above cited, must be said to rest upon the peculiar facts of that case, which clearly showed an irreparable damage which would not be adequately compensated by action at law, as well as acts of the railroad company which were, as the court said, " in utter disregard of right and in defiance of law."

The case of Emack v. Kane, 34 Fed. Rep. 46, also specially relied on by appellee, is against the current of authority, and is certainly overruled by the Flynn case, 118 U. S. 385.

It also may be observed that the bill fails to allege any facts from which it can be told how any of the alleged acts or doings of appellant, or its agents and attorneys, have injured, embarrassed or delayed appellee in the construction of its lines of railway, nor in what way they have depreciated, or, to use the language of the bill, " greatly tended to depreciate the value of the rights, privileges and advantages secured " to appellee, nor in what manner appellee's credit has been or will be injured by any of said alleged acts or doings of appellant.

It is insufficient to allege that irreparable injury or damage will result to appellee by the acts or threats of appellant, but such facts must be set forth as will enable the

court to determine for itself, from the facts, whether that result will follow or is likely to follow.    1 High on Injunctions, Secs. 34 and 35; Goodell v. Lassen, 69 Ill. 145; Chicago P. S. Ex. v. McClaughry, 148 Ill. 381, and cases cited.

Inasmuch as none of the acts of appellant which it is alleged have been done, or are being done, and are threatened to be done, are, under the allegations of the bill, sufficient to justify a resort to equity, the decree is reversed and the cause remanded.